## Burk *versus* Serrill.

1. A court of equity will not aid in anything tending, even remotely, to coerce a wife to relinquish rights conferred on her by law.

2. Burk covenanted to convey to Serrill, his wife refused to sign the deed; he was always willing to convey on payment of the whole of the purchase-money, but not upon payment of two-thirds, leaving the remaining third secured on the land for the wife's interest. In an action against him for breach in not conveying : *Held*, if there were no fraud, compensatory damages only were recoverable.

3. The law will not permit a wife to be coerced into a conveyance of her interest in land indirectly through exemplary damages against her husband.

4. Delay in Burk in not informing Serrill that the wife refused to sign the deed was of value only in settling the amount of actual damage to Serrill, and could not enter into the question of fraud.

January 21st 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Delaware county :* Of January Term 1876, No. 77.

This was an action of covenant, commenced August 18th 1874, by William D. H. Serrill against Joseph E. Burk.

The covenant was as follows, viz. :—

" In consideration of the sum of fifty dollars this day received from William D. H. Serrill, I do hereby promise and agree for myself, my heirs, executors and administrators, to and with the said William D. H. Serrill, to grant and convey to him, his heirs and assigns, in fee simple, by a good and sufficient deed, clear of all incumbrances, all that certain tract of land, with the appertenances, containing about fifty acres, situate in Ridley township, Delaware county, and on which I now reside, for the sum of five hundred dollars per acre, subject to measurement, do on my being requested at any time within sixty days from the date hereof, hereby agree to convey the said premises to the said William D. H. Serrill. The conditions are (if they should be taken) two-thirds cash, the remaining one-third, bond and mortgage, secured on the premises, payable in one year. Witness my hand and seal this 14th day of July A. D. 1870.

Witness present,        }       JOSEPH E. BURK.   [L. S.]"
RICHARD THATCHER.      }

The case was tried September 30th 1875, before Clayton, P. J.

The plaintiff testified that he was purchasing land for gentlemen who were about to form the " Ridley Park Association." Amongst others he went to defendant and asked if he would sell his farm; they agreed that plaintiff for $50 should have the option to take the farm at $500 per acre within sixty days ; the covenant on which this suit was brought was prepared and signed and the $50 paid; Thatcher, who accompanied plaintiff, asked defendant, if his wife would have any objection to signing the paper; defendant said, " She will do what I want her to do." On the 12th of

September 1870, plaintiff gave defendant notice in writing that he would take the land on the terms mentioned in the agreement; on the 10th of November 1870, plaintiff took a magistrate to Burk, tendered him the deed, mortgage and $17,000 in legal tender notes; this sum was considered two-thirds of the purchase-money, and the mortgage was for the balance; he declined to accept the money and make the deed; before the sixty days were up, plaintiff asked defendant if he had any objection to give up his title deeds; he did not refuse, but said they were in Mr. Price's hands; plaintiff saw him often afterwards; he still refused to give the papers; he put it off; the first time he positively refused was at Mr. Price's office in October; he then said he did not want to move away; there was a good spring of water; plaintiff offered him a lease for one, two or three years; in December he again declined to execute the deed; he gave no reason for not signing the deed; never gave as a reason that his wife would not sign; it was after this plaintiff first learned that Mrs. Burk would not sign; he did not incur much expense, magistrate's fees, witnesses and their own expenses; he had not had the title examined; he considered the loss $100 per acre on all the other land he had then bought, 180 acres; if defendant had refused to sell this land plaintiff would not have bought any east of it.    Plaintiff had instituted proceedings in equity to enforce the contract; after they were ended he knew he had the privilege of taking Burk's deed without his wife's dower; he had notice to that effect; knew that his counsel had elected to take the deed without the dower.

R. Thatcher, who accompanied plaintiff to see defendant, testified that he asked defendant to get his wife to sign with him; he replied, she never interfered with his business.   He testified in other respects about as the plaintiff had done, and fixed the damage at about the same amount.

Maule, the justice, testified: that on November 10th 1870, he went with plaintiff to have the deed executed; they overtook the defendant on the road and arranged with him to meet him at Chester; plaintiff there made the tender; defendant said, "I won't accept it;" he declined to sign the deed.   Plaintiff gave other testimony as to the damage sustained by him, some witnesses estimating it less, and some more than his own estimate.

Defendant testified: that at the first interview, plaintiff asked him if he would take $500 per acre for the land; he said he would; they went to the house, plaintiff drew the paper, paid the $50, defendant signed the paper and plaintiff left; defendant's wife that night asked him if he had sold the property; he said he had; she said she would not sign the deed; witness then said, "there is the end of it;" defendant used no persuasion with her; he told her it was well sold; she said it was her home and she was going to stay there; she had never since given him to understand she

[Burk *v.* Serrill.]

would sign a deed, except for about thirty acres north of the railroad. Plaintiff came about a month afterwards for defendant's papers to examine the title ; defendant declined giving them ; said they were with Mr. Price ; plaintiff requested an order for them ; defendant said it would be of no use, as his wife would not join in the deed ; plaintiff said that would not make any difficulty, as he could force a deed through the courts. Defendant offered several times to make such title as he could ; he offered before the master in chancery to convey ; to make such title as he could ; plaintiff said he would not accept that ; he would have the whole title or none ; defendant said he was still willing to make title, to sign and deliver the deed ; he had never tendered a deed.

On cross-examination, he said : At the signing of the paper, Thatcher asked him whether his wife would make any objections to signing ; defendant said she never interfered with his business; she was then not very well, was up stairs lying down ; he often talked to his wife about it.

Mrs. Burk testified : that Thomas Johnson had told her that defendant had sold the land ; she then said she was not satisfied, was not willing, and would not sign the deed ; she said the same to her husband when she saw him ; she has remained of the same opinion, and still declined to sign ; the defendant never suggested to her that she should refuse to sign ; the refusal was entirely her own act without persuasion from any one.

On cross-examination, she said : that on the evening of the agreement with plaintiff, she told the defendant she would sign no deed, nor leave the place ; he spoke of the deed several times ; she told him there was no use of talking, she was not willing.

Thomas Johnson's testimony corroborated Mrs. Burk's.

The defendant's points were :—

1. When a vendor, without fraud, cannot make a title to the vendee, the measure of damages is merely the money paid by the vendee, if any, with interest and expenses.

2. There is no evidence of fraud on the part of the vendor, nor was any part of the purchase-money paid by the vendee.

3. The vendor informed the vendee he could not convey before the latter had expended any money on account of the contract.

4. Under the evidence in this case the verdict must be for the defendant.

The court affirmed the first point and denied all the others.

The court charged : " * * * If it be in the power of the contractor to perform his covenant, the law holds him to it. He cannot escape from its faithful performance ; and if he breaks it, whether from any fault of his own or not, he must compensate in damages, whatever the other party has suffered. But the law regulating the damages to be recovered makes a distinction between cases where there is a fraudulent breach of contract, and those

[Burk *v.* Serrill.]

where the breach is occasioned by some unforeseen and unavoidable obstacle, as where one covenants to convey a good title, and it is afterwards discovered that he does not possess, and by no means in his power can procure such a title, or where the wife of the covenantor, without any collusion, persuasion or request on his part, refuses to join in the deed. In cases of this kind, when the covenantor does all in his power to fulfil his contract, and without any fault of his cannot perform it, the damages to be recovered against him are only such actual and immediate losses as he may have suffered, such as the hand-money paid, with interest thereon, the time lost, and expenses incurred in examining the title, conveyancing expenses, and such work or improvements as he may have made upon the ground on the faith of the contract. [But where there is a wanton or dishonest refusal to perform the contract, or where the covenantor, by some fraudulent act on his part, renders its performance impossible, as when by collusion with his wife, or by request on his part, she refuses to sign the deed; or where her refusal is not her own free and uncontrolled act, but made at the implied or actual request of her husband, the law in such a case awards full compensatory damages, and permits a recovery for all the party has lost by reason of the default of the other party, including the value of the bargain, and all injury and damage he may have suffered by reason of any act of his made upon the faith of the broken covenant.]

"You will apply these principles of law to the present case, and [if you find that the defendant has, by any act of his, either actual or tacit on his part, rendered himself unable to fulfil his contract, it will be such evidence of fraud as will render him liable for full damages to the plaintiff, even if such damages may exceed the full consideration-money of his farm.] But if you shall find that when he made the contract he supposed his wife would join in the deed, and that her refusal was her own act, uninfluenced by any hint or desire of her husband, and that he, in perfect good faith, is not able to fulfil his contract, then the damages to be awarded will only be such as first indicated.

"[The evidence of fraud must be gathered from all the surrounding circumstances—from the conduct and language of the defendant—from his delay in making known the cause why he refused to execute his contract.] You will remember, and I believe the fact is not disputed, that this defendant laid by for nearly one entire month before he informed the plaintiff that he would not or could not comply with his agreement. I think I am not mistaken when I say to you that, according to the evidence, he knew the day that he had made the contract that his wife would not sign the deed; and [he did not, according to his own testimony, inform the plaintiff of that fact until nearly one month afterwards. Was that honest? Was it right? It will be for you to say

[Burk *v.* Serrill.]

whether he was lying by for the purpose of taking advantage of his wife's refusal, if it should be to his interest, and, therefore, withheld the information,] or whether it was an accidental oversight on his part. [What would you have done under the circumstances? Would you not immediately have informed the man, who was acting upon the faith of this contract, that it was out of your power to carry it out? It seems to me that this would have been the proper course.] According to his own testimony he did, about a month afterwards, inform the plaintiff that his wife refused to join in the deed; according to the testimony of the plaintiff he set up a variety of other excuses. The reason he gave upon all other occasions was, that there was a good spring, that the place suited his business, and that he did not desire to leave it.

"From all the circumstances, you may infer fraud on his part, but that is for you. Fraud, like any other act, must be proved. But the law allows, in all questions of fraud, great latitude, because it is always a secret thought. No man publishes his own fraudulent intentions. You must gather that from all the circumstances of the case.

"According to the testimony of the plaintiff, no motive whatever was given of the reason why this man declined to execute his contract until some time in 1871—according to my notes, June 9th 1871—the contract having been made in July 1870, nearly one entire year—lacking one month of a year. The plaintiff is corroborated by a disinterested witness, who was with him at the time when the defendant alleges that he did so inform the plaintiff, and that witness says that no information, according to his recollection, was given.

"[The wife corroborates her husband, and it will be for you to say what credit you will give to the husband and the wife. The law makes their testimony competent, but you, I suppose, are sufficiently familiar with the family relation duly to weigh the testimony of the wife, when it is in favor of her husband.]

"I have said all I deem it necessary to say upon the subject. The question is for you. If you find that there was a fraudulent breach of this contract; [if from the testimony you believe this defendant withheld the deed, and induced his wife to refuse her consent for the purpose of defrauding the plaintiff, you should make him pay the fullest damages.]

"If, on the other hand, you are satisfied that, from no fault of his, he was unable to carry out this contract, then the damages to be awarded will be the hand-money paid, with interest thereon, and the reasonable costs and expenses incurred by the plaintiff.

"You should not scrutinize these expenses with too close an eye, but allow the plaintiff his actual losses by reason of the failure of the defendant to carry out his contract, giving no damages by reason of the loss of the bargain, no damages to the surrounding

30 P. F. SMITH—27

[Burk *v.* Serrill.]

property, or for what the plaintiff may have done on the faith of the contract."

The verdict was for the plaintiff for $9166.66.

The defendant took a writ of error ; he assigned for error :—

3–5. Denying defendant's second, third and fourth points.

6–12. The parts of the charge in brackets.

*W. Darlington*, for plaintiff in error.—The measure of damages for non-performance of a covenant to convey land, where there is no fraud, is the money paid with interest and expenses : Bitner *v.* Brough, 1 Jones 129. Nothing for the goodness of his bargain : Hertzog *v.* Hertzog, 10 Casey 418 ; McDowell *v.* Oyer, 9 Harris 417. There was no fraud here: Lee *v.* Dean, 3 Whart. 331 ; McNair *v.* Compton, 11 Casey 29. Nothing done on other land can be allowed to enhance damages : Bollingbroke's Case, 1 Sch. & Lef. 19, n.

*W. Ward*, for defendant in error.—The plaintiff's remedy in this case is an action for damages : Burk's Appeal, 25 P. F. Smith 141. If the refusal to perform the covenant be dishonest or collusive, damages may include the appreciation in the value of the land : Meason *v.* Kaine, 17 P. F. Smith 126. There was evidence for the jury of fraud in the defendant: McNair *v.* Compton, 11 Casey 23. Fraud is difficult of proof and is properly proved by circumstances : Parrott *v.* Parrott, 1 Heiskel 622 ; May *v.* Wright, 1 Overton 385. The loss in the profit by the bargain was an element in the measure of damages : Bitner *v.* Brough, 1 Jones 127 ; McClowry *v.* Croghan, 1 Grant 317.

Mr. Justice GORDON delivered the opinion of the court, February 7th 1876.

These parties were before us in January 1874, as plaintiff and defendant in a bill in equity, brought by Serrill to compel Burk to execute a deed for the premises which were the subject of the agreement of July 1870, upon which agreement the present action is founded. We then determined, Justice MERCUR delivering the opinion of the court, that the specific execution thereof could not be decreed against the vendor, unless the vendee should be willing to pay the full amount of the purchase-money and accept the deed without the execution thereof by the wife. The reason given by us for this conclusion was that a court of equity would lend its aid to nothing tending, even remotely, to coerce a wife to relinquish the rights conferred upon her by the laws of the land : Burk's Appeal, 25 P. F. Smith 147. Our statutes make very special provision that she shall part with her dower in her husband's land only upon her own free will and consent, and the magistrate, before whom her acknowledgment is to be taken, is charged to see

to it, that there has been no undue influence brought to bear upon her. If, however, her refusal to execute the deed is to suspend the payment to the husband of one-third of the purchase-money during her life, or to subject him to an action for exemplary damage, we can readily perceive that, in this manner, a coercive influence may be brought to bear upon her through her husband, which she may not be able to resist, and thus by indirection that may be effected which could not be accomplished by direct means. This method of compelling a wife to do what the law endeavors to protect her in not doing, is something that the courts have long ago determined not to sanction. In the equity case just referred to, at the instance of the plaintiff's counsel, we directed that a decree might be entered against the defendant, that upon the payment of the purchase-money to him in full he should execute a deed for the premises.

It seems, however, that Serrill, or the company for whom he was acting, did not see fit to accept of this order, but resolved to resort to this action at law, the results of which we have before us. We need not go over the exceptions in detail, for one prime question covers them all. The learned judge of the Common Pleas instructed the jury, that they might find from all the evidence submitted to them that Burk fraudulently induced his wife to refuse to sign the deed, that he might in this manner escape from his own contract, and that if they so found, they might inflict damages upon him to an amount even exceeding the full value of the land. The result of this charge was a verdict of $9166.66, though the amount actually paid by Serrill to Burk, on the contract, was but $50, and the actual incidental expenses, as testified to by Serrill himself, were so trifling that he did not think it worth his while to fix the amount. Of this instruction, the defendant complains, and we think justly. There was no affirmative evidence whatever tending to show that Burk had either directly or indirectly influenced his wife's action in the matter; on the other hand, he, his wife, and Thomas Johnson, swore positively, that from the first, she of her own accord refused to execute the deed.

This should have settled the matter, and the jury should have been informed that they were to render a verdict for compensatory damages only. The fact upon which the court seemed to lay so much stress, that is upon the lack of promptness in the defendant in informing Serrill that his wife had refused to sign the deed, of itself amounted to nothing. In the question of fraud, time was of no consequence whatever, as it turned upon the single fact that Burk had prevailed upon his wife to refuse her assent to the contract; that established and the case was made out; that negatived and the case fell, at least so far as exemplary damages were involved. This question of time may be important in the settlement of the actual damages sustained by the plaintiff; as if he was

[Burk *v.* Serrill.]

thereby induced to have the papers and briefs prepared, or searches or surveys made, the trouble and expenses of which he might have been saved by timely information of the wife's determination.   In this view of the matter this delay may have some significance, but in no other.   On the whole we cannot see that the plaintiff is entitled to much sympathy in this matter.   He knew that the wife's assent must be obtained or her right of dower could not be divested, and if he chose not to consult her, and thus ran the risk of finally obtaining that assent, he has himself to blame if his success was not what he expected.   That the husband said that his wife would do what he wanted her to do does not alter the case, for, without consulting her, he had no right to make any such engagement for her.   However this may be, it is certain we cannot, in view of our statutes and decisions, permit the will of the wife to be coerced, through the pressure of heavy exemplary damages upon her husband, resulting from an assertion of her own undoubted right.

The judgment is reversed and a *venire facias de novo* awarded.