Beauveau Borie, George Harrison Fisher, John W. Pepper, William W. Frazier, and Clement B. Newbold, *v.* Edwin Satterthwaite, James Satterthwaite, Lydia S. Parry, Anna S. Williams and Joseph S. Williams, her husband, and Emma L. Carwithian, Appellants.

*Equity — Vendor and vendee — Specific performance — Cloud on title— Fraud—Principal and agent.*

On a bill in equity for specific performance and to remove a cloud upon title it appeared that S. had employed K. as an agent to sell the land, and that K. had induced the plaintiffs to purchase it. An agreement in writing was executed by S. of the one part and by K. for the plaintiffs, of the other part. K. signed the paper for the plaintiffs under the mistaken idea that both parties must sign in order to make the contract mutually binding between them. The agreement was acknowledged and recorded, and the first instalment of purchase money was paid by plaintiffs and received by S. A few days afterwards S. conveyed the land to his children who have been parties defendant with him. This was done in pursuance of an alleged parol agreement previously made between S. and his children. It was averred that S.'s wife had bequeathed a sum of money to the children, which she had previously loaned or given to her husband, and that the husband had agreed to hold the property in controversy to the use of the children, subject to existing incumbrances and the payment of the other debts of S. The price paid by the plaintiffs was not inadequate, and there were no circumstances of imposition or advantage taken of S. *Held,* (1) that the plaintiffs had a standing to enforce the agreement signed by K. on their behalf; (2) that in making the agreement K. acted for the vendor and not for the plaintiffs; (3) that there was no equity on the part of S. or his children sufficient to defeat the plaintiffs' rights.

Argued Feb. 3, 1897. Appeal, No. 596, Jan. T., 1896, by defendants, from decree of C. P. Montgomery Co., Dec T., 1895, No. 7, on bill in equity. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for the specific performance of a contract, to remove cloud upon title and to prevent the fraudulent use of legal process.

The following facts were found by Swartz, P. J.

The plaintiffs filed their bill to compel the specific performance of a contract for the sale of certain real estate. The defendant, Edwin Satterthwaite, signed the agreement of sale as the vendor of the farm in question. The defendants, James, Lydia and Anna, are his children, the latter being intermarried with the defendant, Joseph S. Williams. The remaining defendant is the owner by assignment of a mortgage against the farm. She commenced proceedings of foreclosure after the contract of sale was signed, and we enjoined further action on this mortgage by preliminary injunction for the reason given in our opinion of February 21, 1896.

On September 11, 1896, the defendants asked leave to file an amendment to their answer. This proposed amendment raises the question whether the complainants have any standing to call on the defendant, Edwin Satterthwaite, to make the conveyance to them. In our opinion this is a matter that can be properly raised under the bill and answers now on file, and the amendment is unnecessary. We must necessarily pass upon the rights of the plaintiffs under this contract of sale before we can enter a decree in their favor.

### FINDING OF FACTS.

1. The defendant, Edwin Satterthwaite, on the 19th day of November, 1895, held title to a farm of about ninety acres in Abington township, Montgomery county. About two years before this date he authorized M. L. Kohler, a real estate broker, to make sale of the farm, agreeing to pay him usual commissions of two per centum if he succeeded in making a sale. The defendant fixed the price at $600 per acre. About two weeks before the said 19th of November, this defendant reaffirmed to Mr. Kohler his willingness to sell at the figures given. On the date last named Mr. Kohler prepared the following contract of sale, which was duly signed and therein set forth:

"Edwin Satterthwaite agrees to sell and M. L. Kohler, acting for Beauveau Borie, George Harrison Fisher, John W.

Pepper, William W. Frazier and Clement B. Newbold, agrees to buy the farm of said Satterthwaite, situate in Abington township, Montgomery county, Pennsylvania, on the Paul Brook and Fox Chase roads, and bounded by lands of William W. Frazier, Sarah J. Robinson, Joseph W. Hallowell and said roads, containing ninety acres and fifty-six perches of land, more or less, for the price or sum of six hundred dollars per acre. The vendor agrees that the title shall be good and marketable and that the price to be paid him shall be paid on the contents as above stated or on the contents to be ascertained by a survey to be made by Joseph W. Hunter or some other surveyor satisfactory to all parties, at the cost of the vendee. The vendor reserves the right to move two large heaps of manure recently hauled on the said premises unless such premises be leased by the vendee to James Satterthwaite, the son of the vendor, in which event the two heaps of manure shall remain. The vendee agrees to pay the sum of six thousand dollars on the execution of this agreement, the receipt whereof the vendor does hereby acknowledge and the said vendee does hereby further agree to pay the balance of the consideration on or before April 1, 1896, on the execution and delivery of a deed in fee simple and delivery of possession of the said premises.

"Signed and sealed this 19th day of November, A. D. 1895.

"(Signed)    EDWIN SATTERTHWAITE  [SEAL.]
"            M. L. KOHLER            [SEAL.]
"Witness
"(Signed)    JOHN RODGERS."

This contract was duly acknowledged by said defendant and Mr. Kohler, and on the following day at the plaintiff's request Mr. Kohler sent the agreement to Norristown, and it was duly recorded in the office for recording deeds, etc., in and for said county in deed book No. 406, page 407, etc.

The down money under the agreement, to wit: $6,000 was handed by the plaintiffs to Mr. Kohler who paid the same, less commissions, to said defendant at the time the contract was executed. On the day before the agreement was signed the plaintiffs informed Mr. Kohler that they would take the property, and requested him to have a contract prepared.

2. The farm of ninety acres was made up of two parts, one a

farm of thirty-three acres conveyed to Edwin Satterthwaite in 1852, the other a farm of fifty-seven acres conveyed to him in 1867. Both deeds were recorded.

3. The wife of Edwin Satterthwaite died in 1892. She left a will, but it was never probated. According to the evidence she bequeathed $9,000 to her three children, James, Lydia and Anna, three of the defendants named in the bill. This money was received by the husband in the wife's lifetime, but whether it was received as a loan or to be used in the purchase of one of the farms is not disclosed by any evidence, nor is it shown when the money was received. There is no testimony that the wife at any time claimed to be a part owner of the farm. The children do not claim any ownership in the farm as heirs or legatees of their mother. Their interest in the farm, if any, is based upon a parol agreement made with the father after the death of the mother, when they demanded from the father the $9,000.

4. In 1892, the farm was incumbered with mortgages aggregating twenty-two thousand dollars ($22,000). The father declared he could not pay the $9,000 to the children without a sale of the property. It was then that the parol agreement was entered into. It is difficult to find the true terms of the arrangement. As set out in the answers its terms do not strictly agree with the proofs taken, and the proofs differ from the recitals given in the deed to the children. For the reasons hereinafter given, we find that under the parol agreement Edwin Satterthwaite was to hold the farm for the children, to secure them in the settlement of their claim of $9,000. In other words, their claim was to be treated by the father as a charge against the farm. There was no provision or stipulation in the agreement for a conveyance of the farm to the children.

5. On November 25, 1895, Edwin Satterthwaite made a deed for the farm to his said children. The conveyance bears date November 22, and was recorded on the 26th of the same month. The consideration named is first, a cash payment of five thousand dollars for the release of Edwin Satterthwaite's interest in the farm; secondly, the assumption by the grantees of all the father's debts then owing; and thirdly, the payment of the nine thousand dollars under the parol contract. The defendants' evidence shows that the money consideration aggregates sixty-three thousand, six hundred dollars ($63,600), but in this sum

is included the six thousand dollars raised to pay back the down money of plaintiffs.

6. Before this deed was made to the children, they had full knowledge of the contract of sale held by the plaintiffs. The son, James Satterthwaite, recognized its validity, for after its execution he made efforts to secure a lease of the farm from plaintiffs. At these interviews concerning a lease he gave no intimation whatever that he claimed an interest in the farm, or that his assent to a sale by the father was necessary. The plaintiffs had no knowledge whatever of any claim of interest in the farm by the children at the time the contract of sale was made and the down money paid.

7. Mr. Kohler had on different occasions acted as the agent for the plaintiff, William W. Frazier, in the purchase of properties in Montgomery county, but the agency was special in each case. He was not at any time the general agent to buy real estate for Mr. Frazier. He was a real estate agent by profession, and was employed from time to time by Mr. Frazier just as other people engaged him to sell or buy particular properties. He was not the agent of Mr. Frazier, secret or otherwise, to buy the Satterthwaite farm, except so far as an agency is disclosed in the contract of sale itself. Before Mr. Satterthwaite signed the agreement of sale he was fully informed by Mr. Kohler who the purchasers were. The signature of Mr. Kohler was appended to the contract with the approval of Mr. Satterthwaite, and Mr. Kohler was made the representative of the purchasers in the contract with the purpose of making the agreement mutually binding. After the contract was executed in this form, and with full knowledge of its contents, Mr. Satterthwaite accepted the down money and paid the commission to the agent.

8. About two weeks before the plaintiffs' contract was signed, Mr. Charles Borie saw Mr. Kohler with the view of purchasing the farm for a golf club. This inquiry was reported to Mr. Satterthwaite, and it was at that interview that the defendant reaffirmed his willingness to sell at six hundred dollars per acre. This was the last conversation Mr. Kohler had with the defendant prior to the Tuesday of November 19th. Mr. Kohler also offered the farm to another gentleman and suggested to him that money might be made, if it was bought, to cut up into

small lots.   On Saturday, the 16th, Mr. Borie declined to buy.
The same day Mr. Kohler met Mr. Frazier and told him he
thought he had a buyer for the Satterthwaite farm, to cut it
into lots.   This news was a surprise to Mr. Frazier.   He was
the owner and occupant of adjoining land and considered such
a sale injurious to himself and his neighbors.   He asked for
time to call his neighbors together to give them an opportunity
to buy the farm.   Mr. Frazier suggested they should have a
preference.   Mr. Kohler answered that a sale the other way
would likely bring him two commissions, as he " would have
the selling after the subdivision."   Mr. Frazier replied that if
they bought, " the farm would still be for sale, and Mr. Kohler
might still make his commission that way."   On Monday the
plaintiffs sent for Mr. Kohler, who, upon their inquiry as to
other buyers, informed them that if they failed to buy, the prop-
erty would likely go into the hands of an improvement com-
pany.   They then agreed to take the .farm at the price of six
hundred dollars per acre.   Mr. Kohler at once sought out Mr.
Satterthwaite, but did not find him until the following morning.
(There was no evidence that Mr. Kohler had an offer for the
farm from any persons other than the plaintiffs.   To our mind
the " improvement company " was a figment of his mind and
held up by him to stimulate the plaintiffs as purchasers.)

9. The plaintiffs bought so as to defeat any use of the farm
for trolley purposes or for division into small lots.   These
motives on the part of the plaintiffs, although known by Mr.
Kohler, were not communicated to Mr. Satterthwaite.

10. The price realized was very little, if any below the market
value.   The property was offered for sale during two years
immediately preceding the date of the plaintiff's agreement of
sale at $600 per acre.   The neighborhood is made up mostly of
suburban homes, and it is difficult to fix the market value of
property of this character.   The amount that is realized for a
particular property depends largely upon the question whether
any person of means takes a special fancy to the property.

11. On December 9, 1895, by assignment, one of the counsel
for the Satterthwaite children became the owner of the Caner
mortgage of $2,000, held against this farm.   It is admitted that
his purchase was made for the purpose of bringing about a sher-
iff's sale of the farm.   On the same day the mortgage was again

assigned to the defendant, Emma L. Carwithian, a stranger to the Satterthwaite children. She took this assignment at the request of counsel for the children and for the purpose of foreclosing the mortgage by a sheriff's sale. It is further admitted that the object of such a sale was to divest a certain indemnity bond and the contract of sale in question.

The court decreed that the deed of November 25, 1895, mentioned in the 5th finding of fact, be decreed null and void; that the $2,000 mortgage mentioned in the 11th finding of fact be assigned to the plaintiffs and that the sheriff's sale under it be declared void; that Edwin Satterthwaite execute and deliver to plaintiffs a good and sufficient conveyance in fee simple of the premises, and that a part of the purchase money to be received from the plaintiffs be applied to pay the claim of the children of Edwin Satterthwaite.

*Error assigned* among others was above decree.

*Amos Briggs* and *N. H. Larzelere*, for appellants.—There was an adequate remedy at law: Act of June 16, 1836, sec. 13, P. L. 789; Smaltz's App., 99 Pa. 312; Kauffman's App., 55 Pa. 383; Dech's App., 57 Pa. 467; Dalzell v. Crawford, 1 Parson's Eq. Cas. 37; Weaver v. Shenk, 154 Pa. 206.

The complainants had no standing under the agreement signed by Kohler: 2 Kent's Com., *631; Story on Agency, sec. 147; Bellas v. Hays, 5 S. & R. 427; Heffernan & Addams, 7 Watts, 116; Swisshelm v. Laundry Co., 95 Pa. 367. Maguire v. Heraty, 163 Pa. 386, rules this case.

The court may in its discretion, grant or refuse a decree, and must be satisfied ex æquo et bono as to the decree it enters: Datz v. Phillips, 137 Pa. 203; Brown v. Pitcairn, 138 Pa. 387; Henderson v. Hays, 2 Watts, 148; Freetly v. Barnhart, 51 Pa. 279; Weise's App., 72 Pa. 351; Dalzell v. Crawford, 1 Pars. Eq. Cas. 37.

The report of a master is neither a decision nor an infallible guide, but an instrumentality to aid the court in performing its functions: Sproull's App., 71 Pa. 137; McConomy v. Reed, 152 Pa. 42.

It is well settled that a man cannot be agent for both buyer and seller: 1 Am. & Eng. Ency of Law, 380; Campbell v.

Penna. Life Ins. Co., 2 Wh. 55; Penna. R. Co. v. Flanigan, 112 Pa. 558; Rice v. Davis, 136 Pa. 442; Cannell v. Smith, 142 Pa. 31.

The principles ruled in Everhart v. Searle, 71 Pa. 256, Holmes's App., 77 Pa. 50, Friend v. Lamb, 152 Pa. 529, and in Young v. Hughes, 32 N. J. Eq. 372, forbid sustaining a contract obtained as this one was.

The rule is well settled that what an agent says while acting within the scope of his authority is evidence against his principal as part of the res gestæ: Penna. R. Co. v. Books, 57 Pa. 343; Grim v. Bonnell, 78 Pa. 152.

*Montgomery Evans,* of *Child & Evans,* and *Geo. Tucker Bispham,* for appellees.—If the purchase money is not payable immediately, but in the future, to be secured by notes or mortgages which a law court could not compel, or any other consideration than cash presently payable, exists, then specific performance will be decreed even in favor of the vendor: Tiernan v. Rolland, 15 Pa. 429.

An action may be sustained on a defectively executed deed, if ratified by parol: Bellas v. Hays, 5 S. & R. 427; Jennings v. McComb, 112 Pa. 518: Grove v. Hodges, 55 Pa. 504; Poor Directors v. McFadden, 1 Grant, 230; Gas Co. v. Philadelphia Co., 158 Pa. 317.

The statute of frauds is satisfied by the signature of the vendor: Tripp v. Bishop, 56 Pa. 424; McClintock v. Oil Co., 146 Pa. 144; Smith & Fleek's App., 69 Pa. 474; Corson v. Mulvany, 49 Pa. 88; Sylvester v. Born, 132 Pa. 467.

OPINION BY MR. JUSTICE MITCHELL, April 12, 1897:

This is a bill for specific performance of a contract to sell land, for the removal of a cloud upon title, and to prevent the fraudulent use of legal process for the accomplishment of a collusive and illegal purpose. As each of these grounds is and has always been a subject of general equitable jurisdiction, the suggestion that there is a full remedy at law does not merit serious discussion, and the absence of a specific averment of want of adequate remedy at law, would not have been fatal even before the adoption of the present equity rules by which merely formal averments are dispensed with.

The defendant Edwin Satterthwaite being the owner and holder of the legal title to the land in question, agreed in writing to sell it to one Kohler for the complainants. The agreement was executed, acknowledged and recorded, and the first instalment of the purchase money paid by complainants and received by the vendor in accordance with the agreement. A few days afterwards the vendor conveyed the land to some of the other defendants, his children, in pursuance of an alleged parol agreement previously made with them. This conveyance was made not only with the record notice but with actual knowledge by the grantees of complainants' rights. In fact it was a fraudulent scheme to defeat such rights and to enable the vendor to get out of his agreement because his children thought they could do better. The learned judge below found there was no inadequacy of price, and no circumstance of imposition or advantage taken of the vendor. Some question was made as to whether Kohler had done his full duty to the vendor in disclosing to him the entire situation. But as the learned judge properly held, no such failure on Kohler's part was satisfactorily established, and if it had been it could only affect Kohler's right to commissions, and in no way concerned the purchasers.

But the point perhaps most relied on by the appellants is that the agreement is between Satterthwaite and Kohler, and the complainants not being parties have no standing to enforce it. There is no weight in this objection. The agreement recites on its face that Kohler was "acting for" the complainants, and they ratified his action by paying the money called for in the agreement: Swisshelm v. Swissvale Co., 95 Pa. 367; Sylvester v. Born, 132 Pa. 467; Yerkes v. Richards, 153 Pa. 646; s. c. 170 Pa. 346. Except for the statute of frauds the whole contract might have been in parol, and the statute was satisfied by the signature of the vendor.

It is further urged that the contract is void because Kohler was acting in a dual capacity as agent for the seller and also for the purchasers. It is conceded that if the facts were so, equity would refuse to enforce the contract, but the evidence entirely fails to show that in making the bargain, Kohler acted for any one but the vendor. He was a real estate agent, and had had this property in charge for two years to sell, at the same price. His own testimony shows that he was negotiating

with other purchasers at this time, and in fact he appears rather to have forced the purchase upon the complainants by representations of the use that was likely to be made of the property by other buyers.    The learned judge was entirely right in holding that Kohler was in no respect the agent of the complainants in negotiating the purchase.   What he did as "acting for" them was to sign the article of agreement for the sale, and as the learned judge found, he did this under the mistaken idea that both parties must sign in order to make the contract mutually binding between the vendor and the purchasers.    His action in this respect was therefore as much in the interest of his employer, the vendor, as of the purchasers, and was openly disclosed to the vendor, who accepted it without objection, received the money from the complainants and paid Kohler's commissions.   The case does not fall within any of our adjudications where agency in a double capacity has been condemned. On all the facts therefore it is plain that there was no legal defense at all to the bill, and no equity on the part of the vendor.

The equity set up in behalf of the other defendants, children of the vendor, is in substance that their mother bequeathed to them the sum of nine thousand dollars, which during her lifetime she had loaned or given to her husband, their father, and the latter on being called upon to pay was unable to do so without selling this land, and therefore made a parol arrangement by which, as set forth in the answer, "subject to the existing incumbrances thereon, . . . . and subject to the payment of the other debts of said Edwin Satterthwaite, he shall hold said property for their use."   The evidence of this alleged agreement, as was said by the learned judge is meager, but taking it at its strongest, it makes out no interest in the land.   It fails to establish an agreement to convey the farm to the children.   The agreement, as testified to by the parties, as set out in the answers, and as recited in the deed from the father to the children, varies in essential particulars, and the learned judge took as favorable a view as the evidence would warrant when he held that "the whole transaction shows that the children, instead of taking a mortgage, had such confidence in the father, and in the value of the farm, that they were content to look to him and his property to pay them at such time as they might make demand."

The decree of the court below provides for the application of part of the purchase money to the payment of the children's claim, and in so doing it amply protects any equity they have shown in the case. Whether they can enforce payment in this way as against other creditors of the father, if any there be, is a question which does not arise in this case.

The remaining defendant, Mrs. Carwithian, was a mere intermeddler, who attempted to help to defeat the complainants' rights by a collusive suit on a prior mortgage. She had no equity of any kind, and was treated quite as well as she deserved when she was allowed her costs.

Decree affirmed at costs of appellants.