## Ritter v. Relly.

*Equity—Specific performance—Wife's refusal to join in deed—Injunction against sale.*

A, a married man, signed an agreement to sell certain real estate to B. His wife was a witness to the signatures, and the receipt to the agreement was signed in the husband's name, per the wife's. When the time fixed in the agreement for the execution of the deed arrived, the wife refused to sign it. The purchaser filed a bill asking for specific performance on the part of the husband and wife, and in case she refused to join in the deed that the husband be perpetually enjoined from selling to any other party. On the trial, the purchaser refused to take a deed from the husband alone: *Held*, (1) that the court could not compel specific performance on the part of the wife; (2) that it was against public policy to enjoin the husband perpetually from selling, because the effect would be indirectly to force the wife to sign, and because it would be against public policy to restrain perpetually the alienation of real estate; and (3) that the bill should be dismissed.

Bill for specific performance and injunction. C. P. Northampton Co., Sept. T., 1922, No. 4, in Equity.

*F. P. McCluskey*, for complainant; *Asher Seip*, for defendants.

STEWART, P. J., Feb. 5, 1923.—The requests for findings of fact and conclusions of law presented by counsel cover every phase of this case. They are entirely sufficient, and when they are affirmatively answered, we have adopted them as our findings of fact and conclusions of law by orders endorsed on the same. The bill was filed asking the assistance of the court in compelling Ralph F. Relly and his wife, Ruth E. Relly, to perform a contract for the sale of real estate by the execution of a deed from Relly and his wife to the complainant. The bill set forth an agreement in writing, made between Ralph F. Relly, of the first part, and the complaint, for the sale of certain premises in the Borough of Wilson. The agreement was signed by Relly and the complainant. The other defendant, his wife, Ruth E. Relly, did not sign the agreement as a party. Ritter signed the agreement in Wilson Borough, while Relly did not sign until his wife brought the agreement to him at Binghamton, N. Y. Mrs. Relly was a witness to both signatures, but Jordan F. Stover only witnessed the complainant's signature. The agreement was not acknowledged before any officer. The consideration was $9500, and $500 was paid at the time of the signing of the agreement. The receipt to the agreement was signed Ralph F. Relly, per Ruth E. Relly. When the date arrived for the giving of the bond and mortgage and the payment of the balance of the purchase money, the defendants were not in the Commonwealth, but the testimony showed that the forfeiture clause of the agreement was not invoked,

and there was a waiver of the strict terms of the agreement on that point. The complainant never entered into possession of the premises and never paid more of the purchase money than above set out. Subsequently, Ruth E. Relly refused to sign the deed. On the trial, the complainant was specifically asked whether he was willing to take a deed from Mr. Relly for the premises without his wife joining in, and he answered that he would not take a deed unless Mrs. Relly would join in. We are thus relieved from any discussion as to the power to compel him to execute a deed subject to the wife's dower or statutory interest. The single question presented is, can the complainant compel them to give him a deed? This matter has been so flatly ruled upon in Pennsylvania from the earliest times that it seems scarcely necessary to more than briefly refer to the cases. In Clark v. Seirer, 7 Watts, 107, on page 110, Mr. Chief Justice Gibson said: "It seems to be at last settled on principles of policy and humanity that equity stirs not to enforce a contract which involves in it a wife's volition in regard to her property; and it seems strange to us now that courts of chancery should ever have hesitated about it. Contrary to the benign spirit of the common law, the avowed purpose of contempt against the husband is to extort a conveyance from her affection or fear. It would be a mockery to tell her she is free to act at her pleasure, while the machinery of a court is put in motion to constrain her by the strongest sympathies of her nature. The disposition evinced by chancellors, in other cases, to set married women free from restraints imposed for their protection, and to hold them to the consequences of their acts performed notoriously under the influence or coercion of their husbands, is one of those things in respect to which the superior wisdom and fitness of the common law is vindicated by experience. I would not, were it practicable to avoid it, expose the husband to imprisonment for a breach of the contract, even by an action; a fear of which, doubtless, serves to loosen the wife's hold on the property. But it is clear the contract will not be decreed on terms that would jeopard his liberty. On the other hand, if the vendee consent to take such title as the husband can give him, it is agreed the coverture will not stand in the way of performance." In Riesz's Appeal, 73 Pa. 485, on page 490, Mr. Justice Sharswood said, after referring to the above case and some later ones, as follows: "These cases settle, if any amount of authority can settle anything, that in Pennsylvania specific performance of an agreement to sell real estate will not be decreed against a vendor who is a married man, and whose wife refuses to join in the conveyance so as to bar her dower, unless, indeed, the vendee is willing to pay the full purchase money and accept the deed of the vendor without his wife joining. The policy of these decisions is very manifest. The wife is not to be wrought upon by her love for her husband, and sympathy in his situation, to do that which her judgment disapproves as contrary to her interest; nor is he to be tempted to use undue means to procure her consent." See, also, Burk's Appeal, 75 Pa. 141, where it was held: "A husband contracted to sell land, the wife refused to join in the deed, there being no collusion with her husband: Held, that the vendee could not compel specific execution by the husband alone and retain part of the purchase money as indemnity against the wife's contingent claim for dower. . . . Specific execution of an agreement to sell land will not be decreed against a vendor, a married man, whose wife refuses to join in the deed, unless the vendee be willing to pay the full purchase money and accept the deed without the wife." Subsequently the complainant sued for damages. The case is reported in Burk v. Serrill, 80 Pa. 413, where it was held: "A court of equity will not aid in anything tending, even remotely, to coerce a wife to relinquish rights conferred on her by law.

4 D. & C.

Ritter *v.* Relly.

Burk covenanted to convey to Serrill; his wife refused to sign the deed; he was always willing to convey on payment of the whole of the purchase money, but not upon payment of two-thirds, leaving the remaining third secured on the land for the wife's interest. In an action against him for breach in not conveying: Held, if there were no fraud, compensatory damages only were recoverable. The law will not permit a wife to be coerced into a conveyance of her interest in land indirectly through exemplary damages against her husband. Delay in Burk in not informing Serrill that the wife refused to sign the deed was of value only in settling the amount of actual damage to Serrill, and could not enter into the question of fraud." Other cases might be cited on the general subject. They seem to be uniform in deciding that equity cannot compel the wife to join in the deed. The last case is Schwoerd-feger *v.* Kelly, 223 Pa. 631, where it was held: "Equity will not compel a married woman specifically to perform a contract entered into by her husband for the sale of his real estate, which she did not sign, although she was present when a small portion of the purchase money was paid to her husband with her apparent assent and approval. Such an agreement as to the wife is within the statute of frauds and cannot be enforced by a decree for its specific performance." That case is stronger than the present case because there the purchaser actually went into possession of the property. The Supreme Court said: "It is unnecessary to consider the effect of recent legislation in enlarging the powers of a married woman in contracting for the sale of her real estate, or the decisions fixing her liability under such contracts. We do not find that the proof of the averments in the bill would establish any contract by the wife. She was not asked to join in the written agreement, and she made no agreement, written or verbal, to release her contingent right of dower. Even if an agreement could be inferred from her 'assent and approval' when $10 was paid her husband, it was an agreement within the statute of frauds and could not be enforced by a decree for specific performance." The learned counsel for the complainant, however, earnestly contends that the present case comes under the doctrine of McCoy *v.* Niblick, 221 Pa. 123; but that case was an action of ejectment, and there the facts of the case showed that the married woman owned the land herself, put it in the agent's hands for sale, accepted the purchase money herself, gave possession to the vendee, and suffered him to make improvements. She subsequently tried to get the property back on the ground that her deed was void. The Supreme Court, however, clearly said that she was liable on her contract under the various enabling acts, and that her conduct took the case out of the statute of frauds. The case is subsequently reported in 228 Pa. 342, and the distinction between that case and this case is again pointed out therein. The learned counsel for the complainant, having discovered the case of Schwoerdfeger *v.* Kelly, 223 Pa. 631, sent for the paper-books of the counsel in that case. From reading appellant's paper-book, it appears that McCoy *v.* Niblick, 221 Pa. 123, was cited to the Supreme Court, and the same contentions were made in that paper-book that are now made here; yet the Supreme Court did not deem them important enough to notice. The bill also asked that the defendants be restrained from selling the property to any other person than the complainant. It is proper to issue an injunction restraining the sale of property during the pendency of the suit, but it would be against the policy of the law to make that injunction perpetual. The very reasons that are so cogently expressed by Justices Gibson and Sharswood, *supra,* would apply if we attempted to restrain the alienation of real estate. If a wife knew that her husband could not sell the property to any one but the complainant, there would be a strong

pressure for her to sign the deed. Such a result would nullify the protection of the statutes. It would also be against public policy to restrain the sale of property in that way. The only case cited in behalf of the contention was Lee Lash Co. *v.* White, 16 Dist. R. 393, which was a contract for the display of an advertisement in a theatre on a drop curtain for a fixed number of years. It was held proper to restrain the owner from allowing any other display during the period fixed in the contract. That case is quite unlike the restraint asked for in the present case. The complainant having refused partial relief, the bill must be dismissed, but in equity the costs are always in the discretion of the court. The defendants' position does not commend itself to the court, and we, therefore, divide the costs as in the following order provided:

And now, Feb. 5, 1923, this cause came on to be heard at this term, and, upon consideration thereof, it is ordered, adjudged and decreed that the relief prayed for in the bill be denied, and that the bill of the complainant be dismissed, without prejudice to complainant's right at law; and it is further ordered that each side shall pay his own witness fees, and that the record costs shall be divided, each side to pay half of the same. The prothonotary will enter this decree *"nisi"* and give notice of the same to parties or their counsel, and if no exceptions are filed within ten days, this decree shall be entered by him as a final decree.

From Henry D. Maxwell, Easton, Pa.