**Bolig v. Becker**

*Adam B. Krafczek*, for plaintiffs.

*Alan I. Baskin*, for defendants.

EDENHARTER, J., July 31, 1972.—Plaintiffs, John A. Bolig and Marie A. Bolig, instituted this action in

equity for specific performance of an agreement to convey land. Defendants, Edgar Becker and Louise Becker, his wife, filed an answer including new matter and counterclaim. Plaintiffs filed a reply. The pertinent issues raised are: (1) Should specific performance be decreed? (2) are plaintiffs entitled to recover damages for the purchase price and improvements to the property? (3) are defendants entitled to recover damages for loss of personal property, interest, taxes, and rental value?

After hearings held thereon, we make the following

## FINDINGS OF FACT

1. Plaintiffs are John A. Bolig, an adult individual residing at 1621 Mulberry Street, Reading, Berks County, Pa., and Marie A. Bolig, an adult individual, residing at R. D. No. 1, Oley, Berks County, Pa.

2. Defendants are Edgar Becker and Louise Becker, his wife, who reside at R. D. No. 1, Oley, Berks County, Pa.

3. On March 12, 1965, defendants executed an agreement for the sale of certain land and bungalow to plaintiffs which reads as follows:

"To whom it may concern.

"I, Edgar Becker and Louise Becker, agree to sell to John A. and Marie Bolig the adjoining property to A. M. Bolig and Marie A. Bolig the land and bungelo on the south side of said land for the sum of twelve hundred dollars (1200.00) payable at 300.00 per year—plus five—(5%) percent Interest on the unpaid balance, due and payable March 1—for 4 years—or before also. John A. Bolig and Marie A. Bolig agree to pay ten—$10.00 per year toward tax on property to Edgar and Louise Becker.

Louise Becker<br>Edgar Becker"

4. Defendants executed a receipt for the purchase price of the aforesaid premises which reads as follows:

"Received from Ambrose M. Bolig Eleven hundred and twenty five dollars on balance due for cottage—land—water rights and road right of way to property on the South side of Bolig property with a frontage of appro. 100. feet by appro. 200 ft deep, exact measurements to be made on survey, for title and settlement thru signing of final papers.

"Property paid in full Sept. 17-1965.

received by
Edgar Becker
Louise Becker"

5. The aforesaid agreement covered premises described as follows:

"ALL THAT CERTAIN lot or tract of land situate along the Westerly side of a 20' wide driveway on the property owned by Edgar Becker, in the Township of Alsace, County of Berks and State of Pennsylvania, bounded and described as follows, to wit:

"BEGINNING at a corner marked by an iron pin, said point being the most Northeasterly corner of property herein described and a common corner of property of other land of Ambrose M. Bolig, and in the Western line of aforementioned twenty foot (20.00') wide driveway; thence along the Westerly side of an existing woods road. South twenty-eight degrees thirty-nine minutes thirty-seven seconds West (S. 28° 39' 37" W.), a distance of one hundred five and sixty-nine hundredths feet (105.69') to an iron pin; thence leaving said road and along the residue property of Edgar Becker, North seventy-four degrees forty minutes thirty seconds West (N. 74° 40' 30" W.), a distance of one hundred seventy and seventy-one hundredths feet (107.71') to an iron pin in line of

property of David W. Bauer; thence along the same, North twenty-four degrees twenty-four minutes twenty seconds East (N. 24° 24′ 20″ E.), a distance of one hundred eight and twenty-eight hundredths feet (108.28′) to an iron pin; thence along the property of aforesaid Ambrose M. Bolig, South seventy-three degrees twenty-one minutes forty seconds East (S. 73° 21′ 40″ E.), a distance of one hundred seventy-eight and four hundredths feet (178.04′) to the place of beginning;

"CONTAINING in area eighteen thousand seven hundred ninety-two (18,792) square feet of land, more or less; . . ."

6. The improvements existing on the aforesaid real estate at the time of agreement of sale on March 12, 1965, consisted of a one-story frame bungalow.

7. At the time of the said agreement of sale, the real estate was subject to the Berks County Land Subdivision Regulations.

8. At the time of the agreement of sale, defendants did not have a plan approved for development of said real estate by the Berks County Planning Commission and were, therefore, not permitted to convey said real estate under penalty provided in said regulations.

9. Defendants were notified by the Berks County Planning Commission that a conveyance of the real estate aforesaid to plaintiffs would be in violation of the Berks County Land Subdivision Regulations.

10. Plaintiffs have made certain renovations to the said real estate, and have remained in possession thereof since March 12, 1965.

11. The said premises is known as "Lot No. 19" on a plan of lots laid out by Walter E. Spotts and Associates, Registered Professional Engineers, September, 1959, for defendant, Edgar Becker.

12. Plaintiffs made the improvements to the said

premises subsequent to the filing of the complaint on January 31, 1967, and when they had knowledge of defendants' refusal to convey.

13. Ambrose M. Bolig participated in the making of the said improvements.

14. Ambrose M. Bolig is the father of plaintiff, John A. Bolig, and husband of plaintiff, Marie A. Bolig, and with their knowledge and consent, acted on their behalf in connection with the said real estate transaction.

15. Ambrose M. Bolig and his wife Marie A. Bolig, occupy a residence adjoining the land in question.

## DISCUSSION

### I.

### *Specific Performance*

The agreement of sale was entered into on March 12, 1965. The purchase price of $1,200 was paid in full on September 17, 1965. However, defendants have refused to convey. In Payne v. Clark, 409 Pa. 557 (1963), the court said at page 561: "Hence, if the terms of the agreement are violated by the vendor, the vendee may go into a court of equity seeking to enforce the contract and to compel specific performance: Borie v. Satterthwaite, 180 Pa. 542, 37 A. 102 (1897); and Agnew v. Southern Ave. Land Co., 204 Pa. 192, 53 A. 752 (1902). While the courts of equity have the power to grant specific performance, the exercise of the power is discretionary. In other words, such a decree is of grace and not of right: Mrahunec v. Fausti, 385 Pa. 64, 121 A. 2d 878 (1956). It should only be granted where the facts clearly establish the plaintiff's right thereto; . . . where the chancellor be-

lieves that justice requires it: Roth v. Hartl, 365 Pa. 428, 75 A. 2d 583 (1950) and Mrahunec v. Fausti, supra."

During the course of this litigation, defendants have in good faith engaged in prolonged but unsuccessful efforts to comply with the Berks County Land Subdivision Regulations. The parties are in accord that this conveyance would be in violation of these regulations, and plaintiffs no longer request specific performance. Under these circumstances, specific performance is denied.

## II.

### Purchase Money and Improvements

Plaintiffs seek return of the purchase money. When equity assumes jurisdiction for one or more purposes, it will retain jurisdiction for all purposes to give complete relief, whether legal or equitable and to do complete justice between the parties. This may include an award of equitable relief not covered by the original prayer, even though it adjudicates questions which, in the first instance, would not have warranted the court in assuming jurisdiction, including an award of damages or other award of money: 13 P.L.E., Equity, §14. A vendee may waive the right to specific performance and instead, recover damages in a court of law for the down money paid. See Ladner on Conveyancing in Pennsylvania, 3rd Ed., §5:26. We find that plaintiffs are entitled to recover as an element of damages from defendants the amount of purchase money paid in the sum of $1,200 with interest thereon at six percent from September 17, 1965: Polka v. May, 383 Pa. 80, 84 (1955).

Plaintiffs also seek to recover damages arising from improvements to the premises made by them subsequent to the agreement of sale on March 12, 1965.

In 32 P.L.Encyc., Sales of Realty, §195, it is stated: "If a vendor has defaulted on his contract to convey, the purchaser is entitled at least to nominal damages if no other damage is shown, and if no fraud is shown. It has been held that where the vendor conveyed to a third person while under the honest belief that the purchaser had abandoned his contract, the purchaser was entitled only to nominal damages.

"Upon proper proof, however, the purchaser may be entitled to recover the payments he has made, and the reasonable expenses incurred by him in reliance on the contract, or necessary in such transaction.

"The purchaser may accordingly recover for money or labor which he has expended in reliance on the contract, and for such items as permanent improvements, necessary repairs, the cost of removing his goods from the premises, and expenses incurred in endeavoring to procure title. . . .

"The purchaser may not recover for expenditures he has made while knowing that the vendor will not be able to perform. . . ."

With these principles we look to the evidence presented. Plaintiffs had possession and use of the premises following the agreement of sale. Plaintiffs' evidence is that on a do-it-yourself basis improvements were made to the bungalow involving a total cost of $3,365 in labor and materials. However, no itemization was produced as to the materials used and cost of the same, or hours of labor involved. We are unable to ascertain from this record that the costs in question were reasonable for the work involved.

In 11 P.L.Encyc., Damages, §12, it is stated: "Since damages generally will not be presumed, they cannot be recovered unless the evidence affords a sufficient basis for estimating them with reasonable certainty, and they should not be estimated on the basis of mere con-

jecture or speculation." It is apparent that satisfactory proof of damages for improvements is lacking on these grounds; and that plaintiffs have failed to meet their burden of proof.

Also, Ambrose M. Bolig testified: "The Court: You stated as I recall, in your testimony here, that no improvements, such as wiring, insulation and so forth, were made to this property until after February of 1967. The Witness: That's right. The Court: Is that correct? The Witness: That's right, Your Honor. The Court: Now in your complaint, actually, it's not your complaint, but it has been averred that certain improvements were made before that, could that be incorrect? The Witness: That could be incorrect. It meant if you are considering cleaning up the place in general; nothing nailed down. The Court: So there were no improvements made, as you described these improvements, none of them were made until after February of 1967. The Witness: None of them."

And John A. Bolig testified: "Can you tell us, in terms of the date, before and after the complaint in this case was filed, whether or not some of this work was done before or done after? You know the complaint was filed January 6, is that right? A. Right. Q. Can you recall, and only if you can, what, if any of that work was done before that date and what, if any of that work was done after that date? A. I would be out on a limb if I commented. The well was put in after this date. . . ."

Ambrose M. Bolig also testified: "Q. So at the time that the complaint was filed, you actually knew that it was a requirement, before a deed could be conveyed to you, that a recorded plan had to be filed in the courthouse? A. After the property was paid for, yes." In addition, John A. Bolig testified: "Q. Was there any no trespassing signs ever posted on the property? A.

By me? Q. Did you ever observe any on the property? A. Yes. Q. And do you know who posted those? A. I can only say the name on the sign was Mr. Becker. . . . Q. Did you observe the signature? A. There was a name. Q. What name? A. Edgar Becker. . . . The Court: Do you know when these signs were put up? The Witness: They have been up and down a dozen times; every time I see a sign on the property, I didn't put up, I take down. The Court; And they are put up again? The Witness: Yes, sir. The Court: How long has this been going on? The Witness: How long have we had the property. The Court: Since 1965, I believe, the record reflects. The Witness: That gives six years in between that, six years. The Court: That would be your best estimate? The Witness: Would be almost a real good estimate."

Under these circumstances it is clear that plaintiffs should not recover any damages for improvements made after the filing of the complaint on January 31, 1967. Since that date the purchasers are not in any position to claim that they acted without knowledge of the refusal of the vendors to convey: Burk v. Serrill, 80 Pa. 413 (1876). But see Holthouse v. Rynd, 155 Pa. 43 (1893). Plaintiffs produced a real estate expert who testified as to the fair market value of the premises as of December 1968, and May, 1971. This testimony is not relevant on the question of damages here. In Restatement, Restitution, §42, Comment on subsection (1), it is stated: "Where the improver is permitted to recover for the improvements, he is entitled to the reasonable value of his labor and materials or to the amount which his improvements have added to the market value of the land, whichever is smaller."

Accordingly, we find that plaintiffs are not entitled to recover damages for improvements since they were not established with reasonable certainty. And, in

addition, the time of installation had been shown to be after the filing of the complaint.

## III.

### Counterclaim

Defendants' counterclaim for personal property loss. Edgar Becker testified: "Q. . . . did you have any personal possessions in the subject premises? A. You mean in between that time? Q. . . . did you have any items of furniture or any other items in the building? A. The place was furnished and it was in good condition when Bolig took over and there was a lot of furniture, a television set, and so on which I didn't put in, the party was in before left it there for a part of his rent. He left it there and he said, are you satisfied with this, and I said, yes, I am. Q. Did you place a value on the personal items? A. Yes, I did. I lost on the deal, in fact, to say the truth. Q. Did you place a value on those items? A. Yes, sir. Q. What value did you place on those items? A. Oh, roughly, I would say about a hundred or sixty or seventy or eighty dollars. I don't know exactly." This testimony is vague and affords no basis for an award of damages.

Defendants urge that they should be awarded damages for interest and taxes. However, the receipt dated September 12, 1965, expressly states: "Property paid in full Sept. 12-1965." Defendants have not substantiated these claims and we conclude they are without merit.

Defendants also press a claim for rental value of the premises for the time they were out of possession. When a purchaser has been in possession, a vendor may be entitled to a set-off for the rental value where the vendor retains the property: Sladkin et ux. v. Greene et ux., 359 Pa. 528 (1948). However, this value

must be established: Ohio Valley Trust Co. v. Allison, 243 Pa. 201 (1914). Defendant, Edgar Becker, testified: "Q. Had you had that property rented to others prior to that time? A. Yes, quite often. Q. How much had you rented that property for on an annual basis? A. Well, I would say this all depended on the season. Sometimes the season was good and sometimes not but I would say an average of about three hundred a year." In addition, he testified: "Q. How was this rent paid, by the month or by the year? A. May I answer that question? Q. Yes, I want you to. A. I had a lot of complaints and a lot of trouble when you rent a place like that by the year. You most of the time get half of the money. . . ." Defendants have not shown that the amount of the rental claimed was reasonable. We may not indulge in conjecture or speculation on this point and this claim must be denied.

## CONCLUSIONS OF LAW

1. Defendants are unable to convey the land in issue since such conveyance would be in violation of the Berks County Land Subdivision Regulations.

2. Plaintiffs are not entitled to a decree of specific performance.

3. When equity assumes jursidiction, it may give complete relief and award damages to the party entitled thereto to do complete justice between the parties.

4. Plaintiffs are entitled to recover damages against the defendants for the purchase price paid in the amount of $1,200 plus interest at six percent from September 12, 1965.

5. Plaintiffs have not met their burden of proof and are not entitled to recover damages for improvements to the premises.

6. Defendants have not met their burden of proof

and are not entitled to recover damages against plaintiffs on their counterclaim.

7. The costs of this proceeding should be borne by defendants.

### DECREE NISI

And now, July 31, 1972, the prayer of plaintiffs for specific performance is hereby denied; and plaintiffs are hereby awarded damages against defendants in the sum of $1,200 with interest at six percent from September 12, 1965; and defendants are hereby denied damages against plaintiffs on the counterclaim. The costs of this proceeding shall be borne by defendants. This decree nisi shall become final in the absence of exceptions filed within 20 days from the date hereof.