# Clark *against* Seirer.

The specific performance of an agreement for the sale of land, cannot be enforced by the vendee by action of ejectment against a vendor, whose wife refuses to join her husband in the conveyance. And in such action the plaintiff is not entitled to recover the possession of the land, upon proof of a tender of performance on his part, and demand of title such as he stipulated for in the agreement.

ERROR to the common pleas of *Cumberland* county.

This was an action of ejectment by Adam Seirer against Jacob Clark, to recover the possession of the tract of land mentioned in the following agreement:

"Articles of agreement made and concluded upon by and between Jacob Clark of East Pennsborough township, in the county of Cumberland, of the one part, and Adam Seirer, of the township and county aforesaid, of the other part, witnesseth: That the said Jacob hath granted, bargained and sold, and, by these presents, doth grant, bargain and sell unto the said Adam Seirer, all his right, title, interest, claim and demand whatsoever, of, in and to a certain plantation and tract of land situate in said township, bounded by land of Isaac Adams, Alexander Wills, Esq., Adam Seirer and others (being the same one hundred acres of land bequeathed to the aforesaid Jacob Clark by his father, Benjamin Clark, late of said township deceased), subject to all the incumbrances on the same created by the said last will of Benjamin Clark deceased; he, the said Adam, is to allow the widow of the said deceased all the privileges on the said plantation, and allow and furnish her with all the grain and meat bequeathed to her in said last will, which the said Jacob is bound to give and pay, in consequence of the bequest of the aforesaid one hundred acres of land to him. Possession of said premises is to be delivered to said Seirer, and good and sufficient title for the same, clear of all incumbrances, is to be made on the 1st day of April next. Said Seirer is to furnish the one half of all the grain sowed on the said land the ensuing season, and to receive all the part of the crop which would be due to the said Jacob agreeably to contract with his tenant. Seirer is to furnish said widow with the grain allowed her after harvest in 1835, and the meat mentioned to be given the season for killing the same fall, and firewood when required; and so on during

the natural lifetime of said widow.    Clark is not to suffer any rail
timber, or other good timber, to be cut for firewood; and the said
Adam Seirer, for himself, his heirs, executors and administrators,
doth hereby covenant, promise and agree to and with the said Jacob
Clark, his heirs, executors, administrators and assigns, to pay for
and in consideration of said plantation, the sum of 1600 dollars, law-
ful money, in manner following, viz.:  800 dollars on the 1st day of
April next, and the remaining 800 dollars in five equal annual pay-
ments, to commence on the 1st day of April 1836, for which bonds
a mortgage security is to be given."

It was proved that Seirer had paid 50 dollars when the agreement
was executed, and that on the 1st of April 1835, Seirer tendered to
Clark the amount of the purchase money then due, and bonds and
mortgage for the residue, according to the terms of the agreement,
and demanded such title as he had stipulated for.    It was also proved
that Clark refused to make the title, and that his wife, who was
present, said that she would never execute the deed.    Clark also
alleged, as an excuse, that Seirer had not furnished the seed grain
mentioned in the agreement.

It also appeared that between the date of the agreement and the
time for its execution, Clark's mother died, which removed certain
incumbrances mentioned in the agreement, to the relief of Seirer.

The plaintiff, Adam Seirer, brought the purchase money into
court, on the trial, "to be paid over to defendant in confirmation of
his title, upon being put into possession, or a judgment in his favour
in this suit."

The defendant requested the court to charge the jury upon the
following point:

"If, when plaintiff agreed to buy the land, he knew that defen-
dant had a wife in full life; if she always refused to join in making
and acknowledging a deed for the land, and so told the plaintiff long
before the 1st of April 1835 ; if defendant then offered to repay to
plaintiff the money he had received, with interest on it; and now
deposits the same in court for Seirer: plaintiff cannot recover in this
suit.    His only remedy is by an action on the covenant."

To which the court answered:

"An action of ejectment is a mere possessory action ; a verdict
and judgment against a defendant does not operate as a disseisin.
It produces, in contemplation of law, a mere change of possession.
Two verdicts and judgment, by our act of assembly, between the
same parties, conclude the right.    Suppose the plaintiff to recover
in this case, how would he hold ?   Not the legal title, but simply
under the article of agreement of Jacob Clark.    Jacob Clark would
still hold the legal title, though out of possession, and Adam Seirer
would hold but in equity; and if Seirer should refuse to pay the sub-
sequent instalments, agreeably to the terms of the contract, Jacob
Clark could put him out again by ejectment.    A recovery in this
case by Adam Seirer could in no wise affect the contingent right of

[Clark v. Seirer.]

dower in the wife of Jacob Clark.ˉ There can be nothing more clear than that a recovery, in this case, by the plaintiff, would not defeat or take away her right of dower. No chancellor nor common law court could, by any direct decree or judgment, deprive her of her right. ⋅ It could only be divested by her own act and consent. To give such effect to this ejectment would be clothing it with an attribute that does not belong to it. It is an ejectment brought on an article of agreement. The plaintiff brings the purchase money into court (as he contends all that is due) for the use of the defendant, on his being put into possession of the land under a verdict and judgment.

"The extent of the recovery would be limited by the nature of the right under which he claims it. Getting in under a verdict and judgment would give him no larger estate than he would have if he had been put into possession by Jacob Clark under the articles of agreement; and such a possession, so obtained, could not take away the wife's claim of dower.

"There is no doubt, further, that if the plaintiff, Adam Seirer, get a verdict and judgment, and possession of the land in accordance with the recovery, and Jacob Clark takes the money paid into court, still Seirer will have a right to insist upon a full and entire execution of the agreement by Clark; and if the wife refuse still to sign a deed, her refusal will constitute a good defence, to the extent of the value of her claim, in any demand by Clark for the unpaid purchase money. The simple nature of the case is this; that Jacob Clark covenanted to sell and convey the land in question to Adam Seirer, and to give him possession. Seirer says he did all he could to comply with his part of the agreement; that he performed, or offered to perform, in due time, all he agreed to do; yet he says Clark refused to give him possession, and this ejectment is brought to obtain possession. Clark had the clear right to dispose of the possession of the land, without the concurrence or consent of his wife. By this covenant Clark did, on certain terms, agree to surrender the possession to Seirer. If Seirer had done every thing on his part he bound himself to do, or offered to do every thing, and it was refused and rejected by Clark, there is no doubt the plaintiff would be entitled to recover. So far as regards the wife, we have seen it can do no harm to her."

The jury found a verdict for the plaintiff.

*Biddle* and *Alexander*, for plaintiff in error, cited, 1 *Watts* 408; 8 *Serg. & Rawle* 491; *Sugd. Vend.* 187; 3 *P. Wms* 190, *note B*; 2 *Ves. Sen.* 76; *Amb.* 495; 4 *Vin. Ab.* 203; 1 *Madd. Rep.* 16; 7 *Ves.* 479; 8 *Ves.* 510; 1 *Fonb.* 294; 2 *Story's Eq.* 731, *sect.* 36; 2 *Watts* 148.

*Hepburn* and *Watts*, contra, cited, 2 *Sch. & Lef.* 166; *Atk. on Titles* 67; 2 *Story's Eq.* 89; 9 *Johns.* 463; 2 *Ves. Jun.* 439; 16 *Ves.* 13; 17 *Ves.* 394; 3 *Ves. & B.* 187.

VII.—K 2

[Clark v. Seirer.]

The opinion of the Court was delivered by

GIBSON, C. J.—It seems to be at last settled on principles of policy and humanity, that equity stirs not to enforce a contract which involves in it a wife's volition in regard to her property; and it seems strange to us now, that courts of chancery should ever have hesitated about it. Contrary to the benign spirit of the common law, the avowed purpose of process of contempt against the husband, is to extort a conveyance from her affection or fear. It would be a mockery to tell her she is free to act at her pleasure, while the machinery of a court is put in motion to constrain her by the strongest sympathies of her nature. The disposition evinced by chancellors, in other cases, to set married women free from restraints imposed for their protection, and to hold them to the consequences of their acts performed notoriously under the influence or coercion of their husbands, is one of those things in respect to which, the superior wisdom and fitness of the common law is vindicated by experience. I would not, were it practicable to avoid it, expose the husband to imprisonment for a breach of the contract, even by an action; a fear of which, doubtless, serves to loosen the wife's hold on the property. But it is clear the contract will not be decreed on terms that would jeopard his liberty. On the other hand, if the vendee consent to take such title as the husband can give him, it is agreed the coverture will not stand in the way of performance. But thus far entitling himself to it by performance of his own part, he must professedly go for no more. If he tender the price, demanding an entire execution of the contract, it may be rejected for having been tendered on a condition he is not entitled to enforce.

Whether he may have an abatement of the price in compensation of the risk of dower left outstanding, is a question of the first impression; for the practice of giving specific execution without the wife's concurrence, is but lately sanctioned; yet there are analogies which seem to show he may not. The doctrine of compensation has doubtless been carried very far; so far indeed, as to compel the execution of a contract which the party had never made nor dreamt of. This was considered, in Drewe v. Hanson, 6 *Ves.* 675, to have been done, in the subdued tone of Lord Eldon, by " the exercise of a strong power;" in plain terms, an arbitrary one. The cases on this head have been those of mistaken description affecting a part of the estate or title; and there is an admitted difference, in respect to it, betwixt a vendor and a vendee; for the latter may insist on having the part to which title can be made, though the former could not have compelled him to accept it; Attorney General v. Day, 1 *Ves.* 224, sometimes misquoted as the Attorney General v. Gowen. On what, then, can this difference depend, but on the *waiver* of the vendee, who may forego something to which he is entitled, and accept less than what he is entitled to by the contract. The difficulty is to understand how he forgoes any thing when he accepts a part and exacts an equivalent for the rest. We attach to the word

[Clark v. Seirer.]

waiver the idea of abandonment; but where there is an equivalent, we are unable to get away from the notion that there has been a change of terms, or the substitution of one contract for another. No idea of waiver is entertained where the vendee is the respondent; for it is perceived at once, that having no choice but to take a defective title, he must be compensated or defrauded. The ground on which equity proceeds, at the prayer of the vendor, is well shown by Stoddard *v.* Smith, 5 *Binn.* 355; where it was determined that the contract is not dissolved by a failure in part, which leaves the object of it untouched; and that the vendee may claim an allowance for it in the purchase money. The vendor succeeded in procuring an enforcement of the contract, and the vendee would have been grossly wronged had he been forced to pay the entire price. Being defenceless at law, it was not at his option to take the property or refuse it; so that nothing could be done for him but compensate the loss by a correspondent abatement, and nothing less would have appeased the demands of justice. There have indeed been cases in which a vendee complainant has been placed in the predicament of a respondent, and relieved for the same reason; for instance Bolingbroke's Case, stated in a note in 1 *Sch. & Lef.* 19, in which the vendee had incurred expense on the faith of the contract, from which he was unable to extricate himself: and he also had an abatement on the principle of necessity. But other considerations press upon the mind, when an untrammelled vendee comes before a chancellor for an exertion of his extraordinary power; an exertion grantable of grace, and not due of right, to control the vendor's legal right to affirm the contract by performing it, or to disaffirm it by responding in damages on it: and this too on his own conditions. He insists that the vendor be driven to his securities for the purchase money, not as they were originally framed, but as he would have them, were the bargain to be made over again: in other words, he comes to the chancellor to reform the contract, not to execute the practicable parts of it. I am unable to see the justice of that. If compensation be his aim, his remedy is an action for damages; nor, consistently with the principle that a man shall not affirm in part and disaffirm in part, do I see how he can have both performance and compensation. It was the opinion of Mr Justice Livingston in Hepburn *v.* Auld, 5 *Cranch* 279, that chancery cannot, in any case, compel specific performance on terms and conditions; or execute a contract in part, and assess damages for the residue; in which, however, he undoubtedly went too far. Still, I say, in the words of Lord Eldon in Emery *v.* Wase, 8 *Ves.* 515, when impugning the doctrine of compelling a husband to compel his wife: " if the cases have determined this question so that no consideration of the absurdity that may arise, and the almost ridiculous state in which this court must, in many instances, be placed, can prevail against their authority, it must be so." And here I concede, in the broadest terms, that it is fixed by a train of decisions which I need not specify, that even a vendee may enforce the con-

[Clark v. Seirer.]

tract in part, and extort compensation for a mistaken description *by which he was deceived.* But there is this redeeming qualification in the principle, that it gives not compensation for a defect which was obvious to the senses, *or one, of which the vendee was in fact apprised.* Thus where a farm was described as lying within a ring fence, though it was in truth intersected by other lands, but of which the purchaser was informed, compensation was denied him, on the ground that he must be taken to have made his own estimate of the defect in settling the price. Dyer *v.* Hargrave, 10 *Ves.* 505. Now what is the character of a purchase from a husband of his wife's dower or estate? "The policy of the law," said the same profound jurist, in Emery *v.* Wase, "is that a wife is not to part with her property but by her own spontaneous and free will. If this was perfectly *res integra,* I should hesitate long, before I would say the husband is to be understood to have gained her consent, and that the presumption is to be made that he obtained it before the bargain, to avoid all the fraud that might afterwards have been practised to procure it. I would have hesitated long in following up that presumption, rather than the principle of the policy of the law; for if a man chooses to contract for the estate of a married woman, or an estate subject to dower, *he knows the property is hers* altogether, or to a given extent. *The purchaser is bound to regard the policy of the law;* and what right has he to complain, if she, who, according to law, can part with her property but by her own free will, expressed at the time of that act of record, takes advantage of the *locus penitentiæ;* and why is he not to take his chance of damages against the husband?" Now when the object of an agreement is such as this has been declared, so inconsistent with political morality that a chancellor will not enforce it, it is difficult to see any thing in it to induce him to compensate the loss of it, or to touch it at all. If, in disregard of public policy, a purchaser has taken a covenant for a wife's title, let him, in the words of Lord Eldon, take his chance of damages for it; a chancellor should not move a finger for him; and if he has taken no covenant, is it not clear that he consented to take the husband's conveyance, without even a chance of damages? But independent of positive demerit, it must be inferred, on the principles of Dyer *v.* Hargrave, that he estimated the difficulty of procuring her compliance, and bid so much the less. Beside, for a contingent liability such as this, the proper compensation is not abatement, but indemnity. Millegan *v.* Cook, 16 *Ves.* 12. Whether the covenant in the articles for "a good and sufficient title free from all incumbrances," might not be held in reserve for the court, we do not pronounce, though I see nothing at present to forbid it. Then to apply these principles to our case.

The failure to furnish the seed wheat was immaterial. It was to have been sown for the vendee's own use, and he might dispense with it. But he insisted on entire performance as the condition of his tender; and on that condition, it was no tender at all. He de-

manded his title, which was undoubtedly the title called for in the articles; and he again called upon the vendor to fulfil the contract. Now a vendee requiring limited performance, ought to leave the vendor under no misapprehension of his demand.   The vendor made evasive replies, without alleging the intractableness of his wife, who was present protesting she would never consent; but no one can say he would not have closed with a proposition to convey, without her concurrence, and without diminution of price.   A tender in general terms must lead to a misconception of the object; and ought not unnecessarily to subject the vendor to the costs and vexation of a lawsuit.

Judgment reversed.