## Montgomery v. Mahjoubian.

*Practice, equity—Transfer to law side of court—Act of June 7, 1907.*

1. Where a defendant fails to raise the objection that the plaintiff has a full and adequate remedy at law by demurrer or answer, "explicitly so stating," and fails also to request the court at the trial to certify the case to the law side of the court under the Act of June 7, 1907, P. L. 440, the objection must be taken as waived, and cannot afterwards be raised by exceptions to the findings of fact and law.

*Vendor and purchaser—Refusal of wife to join in conveyance—Executory agreement—Removal of cloud on title—Jurisdiction, equity.*

2. Where the vendor's wife refuses to sign the agreement of sale or the deed tendered by her husband in pursuance thereof, and the vendee refuses the tender of the deed without her signature, and availing himself of the fact that the notary public had erroneously stated in the acknowledgment clause of the executory agreement that the vendor desired the agreement to be recorded, the vendee, without the vendor's consent, has such agreement recorded, a court of equity on a bill filed by the vendor will direct the recorder of deeds to cancel the agreement of record as a cloud upon the vendor's title upon payment of the proper fees and charges.

Exceptions to adjudication. C. P. No. 5, Phila. Co., Sept. T., 1920, No. 4720, in Equity.

*Albert W. Sanson*, for plaintiff; *William C. Schwebel*, for defendant.

MONAGHAN, J., Aug. 21, 1923.—In January, 1919, L. Boylan, a real estate agent, entered into negotiations with Robert Montgomery for the sale of his property, No. 305 South Sixtieth Street, to the defendant, Armenak Mahjoubian. Montgomery was married; his wife informed him and the agent that she would not consent to the sale. Notwithstanding, an agreement in writing was entered into on Jan. 24, 1919, between "L. Boylan, agent for Robert Montgomery," and the defendant, by which the plaintiff agreed to sell the property to Mahjoubian for the sum of $5800, upon the payment of $200 at the signing of the contract, and the balance of the purchase price by an existing mortgage of $2700 and $2900 in cash at the time of the settlement, which was to be made within sixty days of the date of the agreement; time was of the essence of the contract, unless extended by mutual consent in writing endorsed thereon. Montgomery, the agent and Mahjoubian signed the contract. Montgomery's wife refused to sign it, and notified her husband and the agent that she would not join in the deed. The agent, a few days later, when delivering the instrument to the defendant, informed him that the vendor's wife had said she would not join in the deed; the defendant at the same time saw that the wife's name was not signed to the contract. The plaintiff and defendant met for the purpose of effecting settlement on March 3, 1919. Mrs. Montgomery was not present and was still unwilling to join in the deed. The plaintiff, nevertheless, tendered a deed, duly executed by himself, to the defendant, who refused to accept it because of the non-joinder of the wife. The plaintiff and defendant again met for the purpose of settlement on March 24, 1919, the last day for performance under the express terms of the contract. The wife still persisting in her refusal to join in the deed, the plaintiff again offered the deed, properly executed and acknowledged by himself, to the defendant, who refused to accept the same or pay the purchase price; whereupon Montgomery and Mahjoubian, by mutual consent in writing endorsed on the contract, extended the time for settlement until March 31, 1919. Upon signing the agreement of extension, Montgomery acknowledged the instrument "to be his act and deed." Mahjoubian also made an acknowledgment of the contract. The notary, in appending the acknowledgment to

the contract, without Montgomery's knowledge or consent, made it appear thereon that the latter acknowledged the instrument not only "to be his act and deed," but that he "desired the same to be recorded as such." The contract was then delivered by the notary to Mahjoubian, who caused it to be recorded in the office of the Recorder of Deeds for Philadelphia County. It does not appear from the evidence that the parties met for settlement at any time thereafter up to and including March 31, 1919, the day appointed for final settlement. Thereafter, however, on Oct. 17, 1919, the plaintiff again tendered the defendant's nominee, Calparan, the deed, executed and acknowledged by himself, which was again refused because of the non-joinder of the plaintiff's wife. The plaintiff then offered to return the $200 received by him as a deposit when the contract was signed; this was also refused.

The plaintiff thereafter, on Sept. 23, 1920, filed his bill in equity against the defendant, praying for an injunction against defendant to restrain him from assigning his interest to any person other than the plaintiff, for the cancellation of the agreement on the records in the office of the Recorder of Deeds, and for general relief.

The defendant filed an answer, and the cause was heard on bill, answer, replication and proofs.

The trial judge filed his findings of fact and conclusions of law, and directed that a decree be entered in accordance with the prayers of the bill. The defendant filed exceptions, under which, *inter alia*, he, for the first time, advanced the contention that the plaintiff had a full, complete and adequate remedy at law under the provisions of the Act of June 10, 1893, P. L. 415, and, therefore, this proceeding in equity should be dismissed.

Conceding the plaintiff had a remedy at law under the act referred to, the subject-matter of the bill in this case is for the removal of a cloud on the plaintiff's title, an independent source or head of equity jurisdiction: Ullom v. Hughes, 204 Pa. 305; Octoraro Water Co. v. Garrison, 271 Pa. 421; Onorato v. Carlini, 272 Pa. 489; Frankovitch v. Podolsky, 276 Pa. 144; and since the defendant did not raise the question that the plaintiff had a full, complete and adequate remedy at law, "by demurrer or answer explicitly so stating;" did not have the case put down for decision on that question "*in limine* before hearing of the cause upon the merits;" and did not, at the trial, ask the court to certify the case to the law side of the court, to be tried under the Act of June 7, 1907, P. L. 440, as an action at law, the objection raised must be treated as waived: Montgomery v. Montgomery, 269 Pa. 332; Friedline v. Hoffman, 271 Pa. 530; Onorato v. Carlini, 272 Pa. 489; Meenen v. Negley, 276 Pa. 5; Wright v. Barber, 270 Pa. 186. We are required to deal with the case, therefore, as being entirely within equity jurisdiction.

The trial judge, in granting the prayers of the bill, *inter alia*, ordered the cancellation of the recorded agreement, for the reason that it was a cloud on plaintiff's title. Certain of the exceptions filed challenge the correctness of the reason and the propriety of that order. The question to be determined in the first instance is whether the recorded agreement is a cloud on plaintiff's title.

When the agreement was delivered to the defendant, he knew the vendor's wife had not signed the contract, nor consented to the sale, and was not willing to join in the deed with the plaintiff for conveyance of the property. The defendant, notwithstanding, accepted delivery of the agreement, which he knew was to be performed within sixty days of its date, time being of the essence of the contract. On several occasions within the appointed time, the plaintiff and defendant met for settlement; the wife of the plaintiff was not

3 D. & C.

present, and the defendant was informed that she would not join in the deed. The vendor tendered a deed, in which the wife had not joined, to the defendant's nominee; the vendee refused to accept it and refused to pay the purchase price expressed in the contract unless he received a deed executed by the plaintiff and his wife. The plaintiff and defendant, on the last day for performance under the express terms of the contract, hoping the wife would join in the conveyance, by mutual consent extended the time for settlement. The defendant upon the day upon which the extension agreement was signed filed the agreement of record.

The extended time for settlement was still of the essence of the contract in accordance with the original agreement: Mansfield v. Redding, 269 Pa. 357; but the situation of the parties then remained the same. The plaintiff's wife would not consent to join in the deed; the plaintiff was still willing to deliver a deed executed by himself; the defendant and his nominee refused to pay the purchase price mentioned in the contract unless the plaintiff and wife joined in the deed of conveyance. The refusal on the part of the wife has been persisted in by her from the inception of the negotiations for the sale of the property to and including the time of the trial, and is not, from all that appears in the evidence, the product of collusion with or persuasion by the plaintiff.

The defendant has not asked for specific performance of the contract, nor could he succeed in such an application.

It has long been the settled law of this Commonwealth that specific performance of an agreement to sell real estate will not be decreed against a vendor who is a married man, whose wife refuses to join in the conveyance, so as to bar her dower, unless the vendee is willing to pay the full purchase money and accept the deed of the vendor without his wife joining: Clarke v. Seirer, 7 Watts, 107; Reisz's Appeal, 73 Pa. 485; Burk's Appeal, 75 Pa. 141; Saler v. Lessy, 76 Pa. Superior Ct. 15; Medoff v. Vandersaal, 271 Pa. 169. The policy of these decisions is very manifest. The wife is not to be wrought upon by her love for her husband, and sympathy in this situation, to do that which her judgment disapproves, as contrary to her interests; nor is he to be tempted to use undue means to procure her consent: Burk's Appeal, 75 Pa. 141. However, if the vendee does tender the full purchase price and is willing to accept the title of the husband, specific performance will be decreed, and the vendor will not be permitted to set up his defective title as a defence to the suit: Medoff v. Vandersaal, 271 Pa. 169.

There is another principle which we must bear in mind when considering the questions discussed. Specific performance of a contract for the sale of real estate, where time is of the essence of the contract, as it was in this case, will not be enforced if there has been a failure of the vendee to comply with the obligations assumed within the period limited: Doughty v. Cooney, 266 Pa. 337; McKuen v. Serody, 269 Pa. 284; Mansfield v. Redding, 269 Pa. 357; Piacentino v. Young, 272 Pa. 556.

From the evidence in this case, it is clear the only tender made by the defendant within the time limited, or at any time prior to, until and including the trial, was a tender of the purchase money due, upon demand and condition that the plaintiff deliver a deed for the property in question, executed by himself and his wife. As this demand was beyond his rights and the obligation assumed under the agreement, it was a tender subject to a condition which he had no right to impose upon the plaintiff, and which did not do equity nor put the plaintiff in default upon his refusal of tender.

In Clarke v. Seirer, 7 Watts, 107, Gibson, C. J., said: ". . . If the vendee

consent to take such title as the husband can give him, it is agreed the coverture will not stand in the way of performance. But thus far entitling himself to it by performance on his own part, he must professedly go for no more. If he tender the price, demanding an entire execution of the contract (the joinder of a wife in the execution of a deed), it may be rejected for having been tendered on a condition he is not entitled to enforce. . . ." See Johnston v. Glazier, 1 D. & C. 56.

The tender of the defendant is, therefore, not in accordance with the obligations assumed by him in the contract. It was in fact no tender or offer of performance thereunder.

As we view the decisions to which we have referred, the vendee, in order to entitle himself to specific performance of the agreement before us, must have, within the time appointed by the express terms of the contract or within the time to which it was extended by the parties, been ready and willing to accept the deed of the vendor without the joinder of the wife. This the defendant did not do, not only within the appointed time nor since; on the contrary, he has always refused to do so, and persists in his refusal. Therefore, he is not now, nor can he in the future, on the state of facts now presented to us, be in a position to demand specific performance of the agreement or recover title from the plaintiff in a suit of ejectment. The defendant or his nominee, therefore, has no equitable right, interest or claim now to the plaintiff's title in the property. Hence, the only result of the recorded agreement is to put a blot upon plaintiff's title, and not to vest any right, title or interest in the property in the defendant. The recorded agreement apparently places the equitable title in the defendant and gives notice to the world that the defendant claims an equitable right, title or interest in the property. In reality, the defendant has no such right. The agreement appearing in legal form of record gives to the defendant the semblance of an equitable title or claim of right which is in fact invalid, or which it would be inequitable to enforce. Nothing so certainly answers the definition of the term "cloud on title."

The technical term "cloud on title" is thus defined: "A cloud upon title is a title or encumbrance apparently valid, but in fact invalid. . . . A semblance of title, either legal or equitable, or a claim of right in lands, appearing in some legal form, which is in fact invalid, or which it would be inequitable to enforce. . . . Relief will be granted in equity to remove a cloud on title when the complainant shows a perfect title, legal or equitable, and the title of the defendant is shown to be invalid:" Octoraro Water Co. v. Garrison, 271 Pa. 421, in which case the court also said: "The jurisdiction of a court of equity to remove clouds from title is an independent source or head of jurisdiction, and whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party, after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over the title or interest, a court of equity will afford relief by directing the instrument to be delivered up and canceled," citing Heppenstall v. Leng, 217 Pa. 491; Dull's Appeal, 113 Pa. 510; Sears v. Scranton Trust Co., 228 Pa. 126. See, also, Onorato v. Carlini, 272 Pa. 489; Goldstein v. Markovitz, 276 Pa. 46; Frankovitch v. Podolsky, 276 Pa. 144. In the case last cited neither the vendor nor the vendee in the articles for the sale of real estate were ready to perform on the day of settlement; the vendee thereafter recorded the agreement. The Supreme Court, reversing the action of the lower court, ordered the agreement to be canceled and stricken from the record in the office of the Recorder of Deeds, without prejudice, however, to the defendant to sue at law to recover the hand-money.

3 D. & C.

Montgomery *v.* Mahjoubian.

The plaintiff in the case before us would not be entitled to maintain his bill for the cancellation of the agreement of record unless he complied with the equitable maxim that he who seeks equity must do equity. The facts of the case show that the plaintiff offered to convey, without the joinder of the wife, the title which he possesses. This was all that he could do in that regard. He also offered, and still offers, to return to the defendant the initial deposit of $200. Both offers the defendant has at all times refused. From the evidence presented, the refusal of the wife to join in the deed was not and is not due to any connivance or persuasion of the plaintiff. The plaintiff having shown that he was always ready to do equity, and has not been guilty of any inequitable conduct which would bar the granting of relief, we are of opinion, considering the facts and the law, that the plaintiff is entitled to an order directing the Recorder of Deeds to cancel or strike the agreement of sale from the records.

The defendant has refused to receive, and does not now make claim for, the deposit which the plaintiff offered, and still offers, to return to him. We do not, under the circumstances, feel constrained to make an order directing the plaintiff to return the deposit money, and any order made will be without prejudice to the right of the defendant to obtain redress by his action at law, should he decide to institute one, against the plaintiff. As the defendant has, apparently, a right to recover the hand-money, or any other losses sustained, by an action at law against the plaintiff, we are of opinion that the agreement of sale should not, as a contract, be ordered surrendered to the plaintiff: Frankovitch *v.* Podolsky, 276 Pa. 144; Saler *v.* Lessy, 76 Pa. Superior Ct. 15.

[The court dismissed defendant's controlling exception, but sustained an exception to a finding of the trial judge that L. Boylan was agent for defendant.]

Counsel to prepare and present a form of decree in accordance with this opinion.

STAAKE, J.—This case was heard by me, and as I adopted as my own findings of fact and conclusions of law presented in behalf of the plaintiff, all of which requests I have affirmed and herewith file of record, I do not deem it necessary to enter into any discussion of this case.

The defendant presented no requests for finding of fact or law.

### Final decree.

And now, to wit, Oct. 10, 1923, this cause came on to be heard at this time, and it was argued by counsel, and thereupon, upon consideration thereof, in accordance with the opinion of Monaghan, J., filed Aug. 21, 1923, it is ordered, adjudged and decreed as follows:

1. That the Recorder of Deeds of Philadelphia County cancel of record a certain agreement of sale dated Jan. 24, 1919, from L. Boylan, agent for Robert Montgomery, to Armenak Mahjoubian, recorded in the office for the Recording of Deeds in and for the County of Philadelphia, in Deed Book J. M. H., No. 466, page 310, &c., upon payment to the said Recorder of Deeds for Philadelphia County his proper satisfaction fees and charges.

2. That it is further ordered that the defendant, Armenak Mahjoubian, pay to the plaintiff, Robert Montgomery, his costs, to be taxed.

3. This decree to be without prejudice to any right the defendant may have to proceed at law.